**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ARRAY BIOPHARMA INC., CHARLES M. | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| BAUM, M.D., Ph.D., CARRIE S. COX, | : **THE SECURITIES EXCHANGE ACT** |
| GWEN A. FYFE, M.D., KYLE A. LEFKOFF, | : **OF 1934** |
| JOHN A. ORWIN, SHALINI SHARP, RON | : |
| SQUARER, GIL J. VAN LUNSEN, | : **JURY TRIAL DEMANDED** |
| ARLINGTON ACQUISITION SUB INC., and | : |
| PFIZER INC., | : |
| | : |
| Defendants. | |

---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

1.      This is an action brought by Plaintiff against Array BioPharma Inc. ("Array" or

the "Company"), the members of Array's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of

Section 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in

connection with the proposed acquisition of Array by Pfizer Inc. and its subsidiaries ("Pfizer").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Solicitation Statement (the "Solicitation

Statement") to be filed on June 28, 2019 with the United States Securities & Exchange

Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement

recommends that Company stockholders tender their shares in support of a proposed transaction whereby Arlington Acquisition Sub Inc. ("Merger Sub"), a Delaware Corporation and a wholly owned subsidiary of Pfizer, will merge with and into Array with Array surviving the merger as a wholly owned subsidiary of Pfizer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), Merger Sub has commenced a tender offer (the "Tender Offer") to acquire all of Array's outstanding common stock for $48.00 per share (the "Merger Consideration"). The Tender Offer will expire on July 26, 2019.

3.      As described herein, the Merger Consideration drastically undervalues Array's stock and the consideration Array's stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction is fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Array's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Array's financial projections, relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview") in its financial analysis; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview; and (iii) details about the sales process. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d) and 20(a) of the Exchange Act as Array stockholders need such information in order to decide whether to tender their shares.

4.      It is therefore imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Array's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d) and 20(a) of the Exchange Act and SEC Rule 14d-9.

7.      Personal jurisdiction exists over each Defendant either because Defendant Pfizer is headquartered in this District, or the individual defendants are either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Pfizer is headquartered in this District.

### PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Array common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Charles M. Baum, M.D., Ph.D. has served as a member of the Board since April 2014.

11.     Individual Defendant Carrie Cox ("Cox") has served as Chairman of the Board and as a member of the Board since august 2018.

12.     Individual Defendant Gwen A. Fyfe, M.D. has served as a member of the Board since January 2012.

13.     Individual Defendant Kyle A. Lefkoff has served as a member of the Board since May 1998.

14.     Individual Defendant John A. Orwin has served as a member of the Board since November 2012.

15.     Individual Defendant Shalini Sharp has served as a member of the Board since April 2017.

16.     Individual Defendant Ron Squarer ("Squarer") has served as Chief Executive Officer ("CEO") and a member of the Board since April 2012.

17.     Individual Defendant Gil J. Van Lunsen has served as a member of the Board since October 2002.

18.     Defendant Array is incorporated in Delaware and maintains its principal offices at 3200 Walnut Street Boulder, CO 80301.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ARRY."

19.     Defendant Pfizer is a Delaware corporation and maintains its principal offices at 235 East 42nd Street New York, NY 10017.

20.     Defendant Merger Sub is a Delaware corporation and is a wholly-owned subsidiary of Pfizer, formed solely for the purposes of effectuating the Proposed Transaction.

21.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction Undervalues Array

23.     Array, a biopharmaceutical company, focuses on the discovery, development, and commercialization of small molecule drugs to treat patients with cancer and other diseases in North America, Europe, and the Asia Pacific. It provides BRAFTOVITM (encorafenib) capsules in combination with MEKTOVI (binimetinib) tablets for the treatment of patients with unresectable or metastatic melanoma with a BRAF mutation. The company's lead clinical programs include encorafenib and binimetinib that are investigated in approximately 30 clinical trials for various solid tumor indications, including a Phase III trial in BRAF-mutant colorectal cancer. Its product pipeline also includes ipatasertib, an AKT inhibitor that is in Phase III trial to treat prostate or breast cancers; selumetinib, a MEK inhibitor for cancer; larotrectinib, a PanTrk inhibitor that is in a Phase II/registration clinical trial for cancer; tucatinib, a HER2 inhibitor for breast cancer, which is in Phase II/registration trial; and ARRY-797 that is in Phase III clinical trial for Lamin A/C-related dilated cardiomyopathy. In addition, the company is developing varlitinib/ASLAN001, a Pan-HER2 inhibitor for gastric cancer; ARRY-382, a CSF1R inhibitor that is in Phase II clinical trial to treat cancer; motolimod/VTX-2337, a Toll-like receptor that is in Phase II clinical trial for cancer; and prexasertib/LY2606368, a CHK-1 inhibitor, which is in multiple Phase I or II clinical trials for cancer. Further, its drug candidates in Phase I clinical trials include GDC-0575, a CHK-1 inhibitor for cancer; ARRAY-292, a RET inhibitor to treat

cancer; and ARRAY-195, a Trk inhibitor for cancer. Additionally, its drug candidates include

Ganovo/danoprevir, a protease inhibitor for hepatitis C virus.

      24.    On June 17, 2019, the Company announced the Proposed Transaction:

> NEW YORK & BOULDER, Colo.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Array BioPharma Inc. (NASDAQ: ARRY) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Array, a commercial stage biopharmaceutical company focused on the discovery, development and commercialization of targeted small molecule medicines to treat cancer and other diseases of high unmet need. Pfizer has agreed to acquire Array for $48 per share in cash, for a total enterprise value of approximately $11.4 billion. The Boards of Directors of both companies have approved the merger.
>
> Array's portfolio includes the approved combined use of BRAFTOVI® (encorafenib) and MEKTOVI® (binimetinib) for the treatment of BRAFV600E or BRAFV600K mutant unresectable or metastatic melanoma. The combination therapy has significant potential for long-term growth via expansion into additional areas of unmet need and is currently being investigated in over 30 clinical trials across several solid tumor indications, including the Phase 3 BEACON trial in BRAF-mutant metastatic colorectal cancer (mCRC).
>
> In the U.S., colorectal cancer is the third most common type of cancer in men and women. An estimated 140,250 patients were diagnosed with cancer of the colon or rectum in 2018, and approximately 50,000 are estimated to die of their disease each year.1BRAF mutations are estimated to occur in up to 15% of colorectal cancer cases and represent a poor prognosis for these patients.
>
> * * *
>
> In addition to the combination therapy for BRAF-mutant metastatic melanoma, Array brings a broad pipeline of targeted cancer medicines in development, as well as a portfolio of out-licensed potentially best-in-class and/or first-in-class medicines, which are expected to generate significant royalties over time.
>
> * * *

In May 2019, Array announced results from the interim analysis of the Phase 3 BEACON mCRC trial: The second-or-third-line treatment with the BRAFTOVI triplet combination (BRAFTOVI + MEKTOVI + cetuximab) showed statistically significant improvement in overall response rate and overall survival compared to the control group, reducing the risk of death by 48%. The triplet combination could be the first chemotherapy-free, targeted regimen for patients with BRAF-mutant mCRC. Array intends to submit these data for regulatory review in the United States in the second half of 2019.

* * *

Upon the close of the transaction, Array's employees will join Pfizer and continue to be located in Cambridge, Massachusetts and Morrisville, North Carolina, as well as Boulder, Colorado, which becomes part of Pfizer's Oncology Research & Development network in addition to La Jolla, California and Pearl River, New York.

Pfizer expects to finance the majority of the transaction with debt and the balance with existing cash. The transaction is expected to be dilutive to Pfizer's Adjusted Diluted EPS by $0.04 -$0.05 in 2019, $0.04 -$0.05 in 2020, neutral in 2021, and accretive beginning in 2022, with additional accretion and growth anticipated thereafter. Pfizer will provide any appropriate updates to its current 2019 guidance in conjunction with its third quarter 2019 earnings release.

Under the terms of the merger agreement, a subsidiary of Pfizer will commence a cash tender offer to purchase all outstanding shares of Array common stock for $48 per share in cash for a total enterprise value of approximately $11.4 billion. The closing of the tender offer is subject to customary closing conditions, including regulatory approvals and the tender of a majority of the outstanding shares of Array common stock (on a fully-diluted basis). The merger agreement contemplates that Pfizer will acquire any shares of Array that are not tendered into the offer through a second-step merger, which will be completed promptly following the closing of the tender offer. Pfizer expects to complete the acquisition in the second half of 2019.

Pfizer's financial advisors for the transaction were Guggenheim Securities, LLC, and Morgan Stanley & Co. LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. Centerview Partners served as Array's exclusive financial advisor, while

Skadden, Arps, Slate, Meagher & Flom LLP served as its legal advisor.

\* \* \*

25.    Upon closing of the Proposed Transaction, defendant Squarer will receive $124.77 million from his stock holdings, and $85.25 million in golden parachutes payments. The Company's Chief Operative Officer, Andrew Robbins, who participated in the sales process, will net approximately $99 million from the deal.

26.    The Board has unanimously agreed to the Proposed Transaction and in light of the hefty windfall to be collected by defendant Squarer, it is imperative that Array's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests to tender their shares.

B.    **The Materially Incomplete and Misleading Solicitation Statement**

27.    On June 28, 2019, Array and Pfizer jointly filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

28.    With respect to the financial projections disclosed in the Solicitation Statement, the Solicitation Statement fails to provide material information.

29.     The Company prepared a number of sets of projections due to changes in the business: the October 2018 forecasts, the June 2 Forecasts, and the June 14 Forecasts (the "Company Forecasts"). For the Company Forecasts, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the metrics. Solicitation Statement at 25-27.

30.     When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32.     Thus, to cure the Solicitation Statement the materially misleading nature of the forecasts as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Solicitation Statement not misleading.

33.     With respect to Centerview's *Discounted Cash Flow Analysis* based on the June 14 Forecasts, the Solicitation Statement fails to disclose (i) the basis for assuming that unlevered free cash flows would decline in perpetuity after June 30, 2037, at a rate of free cash flow decline of 80.0% year-over-year; (ii) the inputs and assumptions underlying the selection of the discount rate range of 9.5% to 11.5%; (iii) the line items used to calculate the unlevered free cash flow, including estimated capital expenditures, depreciation and amortization and changes in net working capital; and (iv) the rationale for assuming a 0% perpetuity growth rate; and (v) the terminal values for the Company. Solicitation Statement at 33.

34.     Finally, the Solicitation Statement fails to disclose whether the Company entered into any confidentiality agreements containing standstill or "don't-ask-'don't-waive" provisions and whether they are currently still in effect.

35.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to

tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

38.     As set forth above, Defendants filed and delivered the Solicitation Statement to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

39.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about

11

the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if

such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT III**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Array within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Array, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Array, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Array, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  July 2, 2019

Respectfully submitted,

By: _____
Gloria Kui Melwani
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: 212-545-4600
Facsimile: 212-686-0114
Email: melwani@whafh.com